[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff has appealed from an assessment of damages made by the defendant Commissioner for the taking of a portion of its property, and certain easements and rights, as found necessary by him for the layout, alteration, extension, drainage and change of grade and improvement of the highway known as Interstate Route 291. The taking is described in the complaint, as amended, and is shown on a map entitled: "TOWN OF MANCHESTER MAP ACQUIRED FROM 681 JOHN FITCH ASSOCIATES BY THE STATE OF CONNECTICUT INTERSTATE ROUTE 291 (LIMITED ACCESS HIGHWAY) SCALE 1" = 40' MAY 1, 1990 ROBERT W. GUBALA TRANSPORTATION CHIEF ENGINEER — BUREAU OF HIGHWAYS." Copies of sheets 1 and 2 of the map were introduced into evidence as Exhibit A1 and Exhibit A2 The portion of the taking map marked Exhibit A1 had been revised to October 30, 1990, and the portion of the taking map marked Exhibit A2 had been revised to January 15, 1992.
The parties agreed that the date of the partial taking was January 17, 1992, and that damages assessed by the defendant Commissioner in the amount of $215,200 had been deposited with the court clerk and withdrawn.
The Town of Manchester is in the central part of Connecticut and contains both residential and commercial areas. It is reached conveniently over the interstate and state highway systems. The subject property is in the northwesterly part of Manchester close to the town line of South Windsor to the north and bordered by the Town of East Hartford to the west. It lies in an Industrial Zone, and the Buckland Industrial Park containing many commercial enterprises is nearby. Burnham Street West CT Page 5476 runs generally east and west along part of the northern boundary of the subject property, and Chapel Road runs generally north and south along part of its eastern boundary.
Before the taking, the subject property consisted of a parcel containing 29.43 acres, more or less, of vacant land. It had 844 feet, more or less, of frontage on Burnham Street West and 333 feet, more or less, of frontage on Chapel Road. The land is more or less level at street grade and rises towards the southwest. The southern part of the property is gently rolling and heavily wooded. The north central portion of the property is also wooded. Burnham Brook runs through the property from the north central section towards the southeast section. The subject property before the taking was encumbered by an easement in favor of Connecticut Light and Power Company, hereinafter called the power easement. The power easement runs from the northwest corner of the subject property in a southeasterly direction until it turns to the east at about the middle of the property and continues to Chapel Road. It is 320 feet, more or less, in width along its southeasterly course and 300 feet, more or less, in width along its easterly course.
The defendant Commissioner took 7.040 acres running generally in a northwest to southeast direction beginning at the frontage along Burnham Street West. Also taken were the following easements and rights, as shown on the taking map, over portions of the remaining land of the plaintiff: a full and perpetual drainage right of way easement within an area of 0.165 of an acre, more or less, as shown on Sheet 1 of the map; a full and perpetual easement to install a metal beam rail and construct end anchorage within a distance of 80 linear feet, more or less, as shown on Sheet 1 of the map; a full and perpetual drainage right of way easement within an area of 0.037 of an acre, more or less, as shown on Sheet 1 of the map; a right to grade, as shown on Sheet 1 of the map; and a right to install a ditch, as shown on Sheet 2 of the map. The last two rights terminate upon completion of the work. Access between the remaining land of the plaintiff and Interstate Route 291 was denied. The plaintiff continued to have access to Burnham Street West to the east and west of the land taken. CT Page 5477
The taking had the effect of dividing the subject property into two separate parcels. The parcel to the east of the taking is irregular in shape and contains 6.75 acres, more or less. It has frontage on Burnham Street West of 320 feet, more or less, but access is impeded by a drainage ditch and right of way. It also has frontage on Chapel Road of 332 feet, more or less, but a substantial part of this frontage is encumbered by the power easement, which encumbers 3.27 acres of this parcel. The parcel to the west of the taking contains 15.64 acres, more or less, 5 acres of which are encumbered by the power easement. It has frontage on Burnham Street West of 110.39 feet, more or less. Contiguous to the 15.64 acre parcel is another parcel owned by the plaintiff containing 4.52 acres through which utilities are available over rights of way from Batson Drive to the south.
Robert W. Donald, a city planner and landscape architect, testified as an expert witness for the plaintiff. Donald prepared a master plan of development for the subject property as it existed both before and after the taking. He assumed that roadways and parking would be permitted within the power easement. Donald showed fourteen proposed buildings on a before taking plan which he believed conformed to the zoning and inland wetlands regulations of the Town of Manchester. He opined that after the taking, the metal beam rail and drainage ditch would prevent access to the property to the west of the taking. His post-taking plan showed only two buildings, both on property to the east of the taking, one situated to the north of the power easement with access to Burnham Street West and the other to the south of the power easement served by a long driveway to Chapel Road.
The plaintiff also called Frederick A. Hesketh, a civil engineer, as a witness. Hesketh opined that it would be difficult to obtain the permits necessary to construct a driveway from Burnham Street West into the portion of the subject property lying to the west of the taking.
Peter R. Marsele, a qualified real estate appraiser, was called by the plaintiff as an expert witness. Marsele opined that the highest and best use of CT Page 5478 the subject property before the taking was for industrial development. He used the sales comparison approach to value and, after making adjustments, concluded that the subject property before the taking had a fair market value of $2,493,000. Marsele evaluated the two parcels remaining after the taking separately. He opined that the highest and best use for the parcel to the east of the taking was for development of a small area fronting on Burnham Street West with the remainder for assemblage with adjoining land. Marsele opined that there was no access to the parcel west of the taking and that the highest and best use of that parcel was for open space. He used the same comparable sales but made much steeper adjustments for the power easement because it encumbered a larger proportion of each of the remaining parcels than was the case before the subject property was divided by the taking. He concluded that the fair market value of the portion east of the taking was $192,000 and that the fair market value of the portion west of the taking was $215,000, for a total of $407,000. He concluded that the plaintiff had sustained damages of $2,086,000.
The defendant Commissioner called John F. DeLucco, a qualified real estate appraiser, as an expert witness. DeLucco opined that the highest and best use for the subject property before the taking was for development for commercial or industrial use. It was his opinion that a single tenancy occupied building would have made for the best use of the property because of the power easement. Using the comparable sales method, DeLucco opined that the fair market value of the subject property before the taking was $807,000. He considered that after the taking the highest and best use for the parcel to the east of the taking remained the same as it was before the taking. Using the same comparable sales as before, he concluded that the fair market value of this 6.75 acre parcel after the taking was $180,000. DeLucco opined that the highest and best use after the taking of the parcel to the west of the taking was for assemblage to abutting property. Using the same comparable sales as before, and allowing $40,000 as an estimated cost to cure for construction of an industrial type of driveway for access, he concluded that this 15.64 acre parcel had a fair market value of $411,800 after the taking. He estimated the total fair market value of the subject property after the taking at $591,800 CT Page 5479 and the damages at $215,200.
The principal dispute between the parties arises out of the assertion by the plaintiff that it lost access to the parcel lying to the west of the taking and that this parcel was rendered virtually useless by reason of the taking. The defendant Commissioner did not deny access to Burnham Street West, however, and the certificate of taking specifically provides for access to Burnham Street from a point in the southerly street line lying opposite station 16+90 and running westerly thereof as shown on sheet 1 of the taking map. This is the 110.39 foot frontage on Burnham Street West referenced earlier in this memorandum of decision. Because there was no driveway in that area before the taking, the defendant Commissioner did not construct a driveway for access. There was evidence that a driveway could be constructed by the plaintiff at a cost of $40,000. We have concluded that the plaintiff is able to obtain access for the parcel to the west of the taking to and from Burnham Street West.
It is our duty when sitting on appeal in condemnation cases to make an independent determination of value and fair compensation in light of all of the circumstances, the evidence, our general knowledge of the elements affecting value and our viewing of the subject premises. After having seen the property, and having given due consideration to the testimony of the expert witnesses and all of the evidence, and relying upon our own knowledge of the elements establishing value, we conclude that the before taking value of the subject property was $1,446,750, that the after taking value is $864,750, and that the damages sustained by the plaintiff are $582,000. Judgment may enter for the plaintiff for the further sum of $366,800 in addition to the sum of $215,200 already paid, with interest on such further sum of $366,800 from the date of taking to the date of payment, together with costs and a reasonable appraisal fee of $1,000.
David M. Shea State Trial Referee
William C. Bieluch State Trial Referee CT Page 5480
George D. Stoughton State Trial Referee